**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KENNETH LOVE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:21-cv-00185** |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

CSX Transportation, Inc. ("CSX") terminated Locomotive Engineer Kenneth Love after he fell asleep at work and violated workplace safety rules. Love sued CSX under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, alleging that his termination was because of his race. Because the record shows that CSX treated similarly situated white employees the same or worse than Love, CSX's motion for summary judgment (Doc. No. 30) will be granted and this case will be dismissed.

## I. BACKGROUND

The undisputed facts establish the following.

CSX, a railroad transportation company, hired Love, shortly after he graduated high school in 2000. He worked as a Freight Conductor ("Conductor") for five years before becoming a Locomotive Engineer ("Engineer") on August 26, 2005. (Doc. No. 38 at 21). As a Locomotive Engineer, he is responsible for properly operating a train. (Id. ¶ 3).

CSX's Operating Rules apply to Locomotive Engineers. When an engineer violates one of these rules, he or she is subject to CSX's disciplinary policy, known as the Individual Development and Personal Accountability Policy ("IDPAP"). (Doc. No. 35 ¶ 10). The IDPAP classifies certain violations as "major," which are offenses that subject an engineer to "removal from service

pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible." (Doc. No. 36-9 at 7).

Until June 14, 2019, Love had never been cited for a "major" violation. (Doc. No. 38 at 22). On that date, he fell asleep after Conductor William Brewer directed him to move the train ahead in the terminal. (Id. at 23). After he woke up, Love noticed he had allowed the train's engine to move beyond a stop signal without permission. This constitutes a "major" violation of IDPAP Rule 504.20, (id. at 23–24; Doc. No. 36-9 at 7), which provides:

> A train approaching a fixed signal requiring a stop must stop before any part of the movement passes the signal. If a train passes a Stop signal without permission:
>
> 1. Notify the train dispatcher, and
> 2. Provide warning against approaching trains.

(Doc. No. 35 ¶ 9). Love immediately self-reported the violation. (Doc. No. 38 at 23).

CSX Assistant Superintendent of the Nashville Division, Genous "Gator" Hodges, sent Love a charge letter notifying him of a "formal investigation" into the incident. (Id. at 24–25). Superintendent Brad Batson, who is white, made the decision to terminate Love following the investigation. (Doc. No. 35 ¶ 24; Doc. No. 38 at 28–29). Love appealed his discharge, but CSX denied it. Love appealed again, and the Arbitrator and Public Law Board ordered that he be reinstated without back pay. (Doc. No. 38 at 32).

## II. LEGAL STANDARD

The Court will grant summary judgment to a moving party that shows "there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court "must

ultimately decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Burgess v. Fischer, 735 F.3d 462, 471 (6th Cir. 2013) (quoting Anderson, 477 U.S. at 251–52). In doing so, the Court "draw[s] all reasonable inferences in the light most favorable to the non-moving party." Davis v. Gallagher, 951 F.3d 743, 747 (6th Cir. 2020) (citing Anderson, 477 U.S. at 251–52). However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. See Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003).

**III. ANALYSIS**

CSX is entitled to summary judgment on Love's claims of race discrimination under Title VII and Section 1981. While it is true that each statute makes it unlawful for an employer to discriminate against an employee based on their race, Love has not presented admissible evidence creating a genuine dispute of material fact from which a reasonable juror could infer that his termination was due to his race.

Love relies upon circumstantial evidence, triggering the familiar burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). He has the initial burden to demonstrate a prima facie case of racial discrimination, then the burden shifts to CSX to articulate a legitimate, non-discriminatory reason for the termination. If CSX does so, Love must show that the articulated reason was pretext for discrimination. Nguyen v. City of Cleveland, 229 F.3d 559, 562 (6th Cir. 2000) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)).

Love has failed to establish a prima face case of race discrimination, which requires him to show: (1) his membership in a protected class; (2) his qualification for the position; (3) he was subject to an adverse employment action; and (4) he was replaced by a person outside the protected

class or he was subject to less favorable treatment than a similarly situated individual outside the protected class. Laster v. City of Kalamazoo, 746 F.3d 714, 727 (6th Cir. 2014). The parties do not dispute that Love is a member of a protected class, was qualified to be an engineer, and that he lost his job. (Doc. No. 38 ¶¶ 1–2). The parties dispute whether Love was replaced by a person outside his protected class or treated less favorably than similarly situated members of the unprotected class.

Love cannot show that he was replaced by an individual outside the protected class. In the Sixth Circuit, a person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties; "[a] person is not considered replaced when [his] duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" Geiger v. Tower Automotive, 579 F.3d 614, 623 (6th Cir. 2009) (quoting Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir. 1990)). When a collective bargaining agreement selects a replacement or allocates work through a bidding process, there is no replacement. MacDonald v. United Parcel Serv., 430 F. App'x 453, 459 (6th Cir. 2011). In MacDonald, the plaintiff claimed age discrimination when he was discharged and he was replaced by another employee who was at least eight-and-a-half years younger. Id. at 459. The Sixth Circuit agreed that dismissal was proper because the plaintiff was not replaced by an individual outside of his protected class. Id. The court reasoned that the plaintiff's replacement was "not hired by management for the position"; instead, he "acquired the position pursuant to a collective bargaining agreement," which "does not give rise to an inference of discrimination." Id. (citations omitted).

CSX's Rule 30(b)(6) witness Michele Ross testified that no one replaced Love or was hired to fill his position. (Ross Dep., Doc. No. 36-2 at 67:19–25). Rather, Love's replacement was

selected through the collective bargaining agreement, which required that his job responsibilities be absorbed by other, current CSX employees through a bidding process "driven by union seniority." (Id. at 68). Love doesn't dispute Ross's testimony. (Doc. No. 35 ¶¶ 16, 53–55). The summary judgment record establishes that CSX did not hire anyone to replace Love, and that his duties were either allocated to or absorbed by existing employees through a collective bargaining agreement. These facts preclude an inference of race discrimination, MacDonald, 430 F. App'x at 459, Love cannot demonstrate a prima facie.

Nor can Love show that he was treated less favorably than similarly situated employees outside of his protected class. To be deemed similarly situated, a plaintiff must be "similarly situated in all of the relevant respects to an employee of a different race who was treated better." Johnson v. Ohio Dep't of Public Safety, 942 F.3d 329, 331 (6th Cir. 2019). The Sixth Circuit has outlined certain factors courts must consider as part of this determination, including whether the non-minority employees dealt with the same supervisor, whether they were subject to the same standards of employment, and whether they engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992). In the disciplinary context, this requires that Love and any comparator have engaged in acts of "comparable seriousness." Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002); see also Crawford v. Chipotle Mexican Grill, Inc., 773 F. App'x 822, 831 (6th Cir. 2019).

The trial jury cannot make an inference of racial discrimination when the evidence shows that similarly situated, white employees were treated the same or worse than Love. Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). In Primes, a black assistant U.S. Attorney (AUSA) claimed that the Department of Justice, along with his supervisor discriminated against him based upon his race

when he was scored less favorably than his white colleagues. Id. at 765. The Department of Justice disagreed, pointing to undisputed evidence that it "treated plaintiff the same as at least four similarly situated, white AUSAs. Id. at 766. The Sixth Circuit agreed, finding that even though "[o]ne black male and one white male were rated higher," at least four other non-protected employees "received the same rating" as the black plaintiff, which precluded an inference of race discrimination. Id. at 766–67; see also Agee v. Northwest Airlines, Inc., 151 F. Supp. 2d 890, 893–94 (E.D. Mich. 2001) (finding that plaintiff was unable to establish a prima facie case of race discrimination where the evidence showed he was "treated the same as a similarly situated individual outside the protected class").

Love's case is on all fours with Primes. Here, the summary judgment record reflects that two similarly situated white employees – T.E. Traylor and D.E. Johnson – were treated the same or worse than Love. Like Love, Johnson and Traylor each worked at the Nashville terminal under supervisor Brad Batson. (Doc. No. 35 ¶ 23; see also Doc. No. 36-7). Like Love, each engaged in work-related behavior that led to their termination. (Doc. Nos. 40-1 at 2; 40-2 at 1). Johnson failed to remove a derail prior to operating a locomotive over it. (Doc. No. 40-1 at 2). Traylor used excessive power when making shoving movements on cars. (Doc. No. 40-2 at 1). Each violation was, like Love's, a "major operating incident" that "warrant[ed] removal from service pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible." (Doc. No. 36-9 at 7). Love, Johnson and Traylor were subject to the same standards of employment and discipline. CSX held an investigatory hearing for each. (Doc. Nos. 36-13, 40-1; 40-2). All three were discharged by CSX and afforded the opportunity to have their cases heard before the Public Law Board. (Doc. No. 36-7; Doc. Nos. 36-13, 40-1, 40-2). The final result of Love's hearing was the same as Johnson's: the Public Law Board reinstated both without back pay. (Doc. Nos.

36-13 at 2; 40-1 at 3). Traylor received a worse result than Love because the Public Law Board denied his claim for reinstatement and upheld CSX's permanent dismissal. (Doc. No. 40-2). This undisputed evidence precludes Love from demonstrating a prima facie case of discrimination. Primes, 190 F.3d at 767. Accordingly, a reasonable juror cannot infer that Love was treated less favorably than similarly situated, white individuals outside of his protected class.

## IV. CONCLUSION

For the foregoing reasons, CSX's Motion for Summary Judgment (Doc. No. 30) will be granted, and this case will be dismissed.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE